**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kenneth L. ALLISON, Defendant– Appellant.**

**No. 96–2504.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1997.

Decided July 18, 1997.

Jeffrey B. Lang (argued), Office of the United States Attorney, Rock Island, IL, for Plaintiff–Appellee.

George F. Taseff, Richard H. Parsons (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before CUMMINGS, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Kenneth Lewis Allison was convicted after a jury trial of possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 841. In this direct appeal from his conviction, he submits that the district court committed reversible error by admitting evidence of certain prior cocaine sales. He also challenges the legal sufficiency of the evidence supporting the judgment of conviction. For the reasons set forth in the following opinion, we affirm the judgment of conviction entered by the district court.

## I

## BACKGROUND

Responding to a 911 call on November 11, 1995, the police investigated a possible burglary in progress at a house in Rock Island, Illinois. The investigating officers found Mr. Allison and a friend exiting a side door. Mr. Allison backed into the house and attempted to shut the door, but the officers pushed it open. When Mr. Allison dropped the coats he was carrying, he also dropped a plastic bag with fifteen rocks of cocaine base weighing six grams. He had $245 and two clear plastic baggies, similar to the one containing the crack, in his pockets.

On November 28, 1995, Mr. Allison was taken into federal custody. Consequently, he was transported from the Rock Island County Jail to Peoria for his initial appearance. During the trip, Mr. Allison stated to the officer accompanying him that he would "beat" the case because his friend had claimed ownership of the drugs and because everyone knew Mr. Allison was a crack addict. R.51 at 127. He characterized himself as an old-time burglar, not a drug dealer.

Five years earlier, between November 1990 and January 1991, Mr. Allison had made five sales of cocaine to an undercover police officer. Each sale was for $100. Before the commencement of trial on the present charges, the district court granted Mr. Allison's motion to bar the admission of evidence of those sales. At that time, the district court took the view that this evidence ought not be admitted because there was both a lack of similarity and a temporal remoteness between the present offense and those cocaine sales five years earlier. The court also concluded that the admission of the evidence would be prejudicial. However, the court noted that it would revisit the ruling and might permit the admission of that evidence on rebuttal if "the defendant takes the stand and testifies or if there is other defense evidence presented that the government believes opens the door." R.49 at 101.

At trial, both parties mentioned, in their initial address to the jury, Mr. Allison's statement that he was not a drug dealer but rather a burglar. In support of its case that he was a dealer, the government presented evidence from an expert that possession of six grams of cocaine reflects an intent to sell rather than to consume for personal use. After the government rested, the defense made an offer of proof outside the presence of the jury. It proffered the testimony of Pamela Hauman, who would testify that six grams of crack could be consistent with personal consumption. It asked the district court to determine whether the proffered testimony would "open the door" to the admission of the prior cocaine deliveries. The government responded that this evidence of "personal use amount" would put Mr. Allison's intent in possessing this cocaine at issue and would justify the admission of the 404(b) evidence. In the course of considering this matter, the district court decided to revisit its earlier ruling on the admission of the prior cocaine deliveries. The court explained that Mr. Allison's statement to the police officer—that he was simply an addict and an "old time burglar," not a dealer—already was before the jury and that no error had been committed in its admission. The court acknowledged that there were still concerns as to whether the need for admitting evidence of earlier sales outweighed the possible prejudice to Mr. Allison. Nonetheless, weighing these factors, it determined that the importance of the evidence to the government in proving the element of intent outweighed the possible prejudice to Mr. Allison from the admission of the evidence. The

court also noted that the proffered evidence of the defense would not open "some door that was otherwise closed," because "the door is open anyway." R.51 at 157.

The defense then put on its case. It presented Ms. Hauman's testimony that possession of six grams of crack could be consistent with personal consumption.. On rebuttal by the government, a police officer was called to introduce evidence of the prior deliveries. The court instructed the jury both during and at the close of his testimony that evidence of these transactions was admitted for the jury's consideration as to the defendant's motive with respect to the charged offense.

The court later denied the defendant's motions for mistrial and for judgment of acquittal. The jury found Mr. Allison guilty of possession of cocaine base with intent to distribute. The court denied his motion for a new trial and sentenced him to 135 months of imprisonment and 8 years of supervised release.

## II

## DISCUSSION

### A.

■ Mr. Allison submits that the district court abused its discretion in admitting evidence concerning his prior cocaine sales to an undercover officer. In his view, the court's initial ruling was correct, and the evidence ought to have been excluded. We review the trial court's evidentiary rulings only for an abuse of discretion. *United States v. Curry*, 79 F.3d 1489, 1494 (7th Cir.1996). Under this deferential standard, we ask whether the district court made a decision that was within the range of options from which we might expect a reasonable trial jurist to choose under the circumstances. *United States v. Penny*, 60 F.3d 1257, 1265 (7th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); *United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir.1992).

■ Here, in determining whether to admit the evidence of these other crimes, the district court was required to apply Rule 404(b) of the Federal Rules of Evidence:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b). In *United States v. Tringali*, 71 F.3d 1375 (7th Cir.1995), *cert. denied,* — U.S. ——, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996), this court outlined the approach for appellate review of a district court's application of this rule. We said that we first would ascertain whether the tendered evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the charged crime. We then would examine whether the other acts were similar enough and close enough in time to be considered relevant to the establishment of that matter in issue. Then we would review the evidence to determine if it was sufficient to support a jury finding that the defendant committed the similar acts. Finally, we would determine whether the probative value of the evidence outweighed the danger of unfair prejudice to the defendant. *Id.* at 1379 (citing *United States v. Lampkins*, 47 F.3d 175, 179 (7th Cir.), *cert. denied,* 514 U.S. 1055, 115 S.Ct. 1440, 131 L.Ed.2d 319 (1995)).

■ Assessing the record according to these criteria, we believe that the district court's determination must be sustained. Mr. Allison was charged with a specific intent crime—possession with intent to distribute cocaine base. Thus, the government had to prove both Mr. Allison's possession of the crack cocaine and his intent to distribute those six grams seized. Because his defense at trial was that, even if he possessed the crack cocaine, he intended it for personal use rather than distribution, Mr. Allison's intent in possessing the contraband was an essential component of the jury's decision. Thus the evidence of his past activities with cocaine was very probative. *See United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996) (stating that "the government may present other acts evidence to prove intent" when the crime charged is one of specific intent) (quot-

ing *Curry*, 79 F.3d at 1495). We cannot say that the earlier sales of cocaine were so dissimilar or so removed in time as to be irrelevant. *See Tringali*, 71 F.3d at 1379 (concluding that evidence of participation in cocaine conspiracy nine years earlier was admissible to show present knowledge and intent to distribute). The earlier events were established through the first-hand testimony of a police officer and therefore were sufficient to support a jury finding that the acts had occurred. *See United States v. Long*, 86 F.3d 81, 85 (7th Cir.1996).

In this case, Mr. Allison does not claim the district court failed to utilize the appropriate methodology in its consideration of the evidence. He simply asserts that the district court reached the wrong conclusion. Given the governing standard of review, we must conclude that the determination reached by the district court was not one that was beyond the range of options that we would expect a reasonable trial jurist to select under the circumstances presented here.

■ In our evaluation of the district court's ruling, we certainly must take into account the fact that it reached the opposite result at an earlier stage of the trial. There is certainly no per se rule against the district court's changing its view on an evidentiary ruling in the course of the litigation. *Cf. United States v. Higham*, 98 F.3d 285, 292 (7th Cir.1996) (noting that a district court may change its view when "the landscape" has changed). In considering the reasons for the court's change of view, a sufficiently plenary explanation by the district court greatly aids the task of appellate review even under a deferential standard. Here, we believe that the record adequately supports the district court's explanation that it had taken too narrow a view of the case when it initially ruled.[1] The district court noted that Mr. Allison's statement, made to the police officer transporting him, that he was an addict, not a dealer, was already before the jury.[2] Consequently, evidence of his previous sales was relevant and probative of whether he had the intent to sell the narcotics in question.

We also note that the district court did not discern any indication that the government's introduction of the police officer's account of Mr. Allison's statement was in any way an attempt to evade the court's earlier ruling. Finally, it is noteworthy that the district court emphatically cautioned the jury as to the limitations it was to place on its consideration of the evidence.

**B.**

■ Mr. Allison next argues that, even if the admission of the evidence of the earlier sales was technically permissible under the usual rules, its admission under the circumstances of this case deprived him of a fair trial in violation of the Due Process Clause of the Fifth Amendment. He contends that his counsel depended upon the district court's initial exclusion of the evidence in preparing for trial and in his initial presentation to the jury. He submits that, after his motion in limine was granted, he prepared his defense knowing that, unless he took the stand or in some manner raised the issue, the jury would not learn of his prior drug activities. During the trial, defense counsel made no mention of that evidence. Had Mr. Allison known earlier that the previous sales would be admitted, he would have softened the blow of that evidence by discussing it in defense counsel's opening statement and by questioning the arresting officers in more detail concerning the offense "with an eye toward distinguishing it from the previous deliveries." Appel-

---

1. In this regard, we cannot accept Mr. Allison's suggestion that the district court, in deciding to reverse its earlier ruling, misapprehended the purpose and the contours of the "opening the door" rule of evidence. It is true that, in deciding to admit the evidence, the district court commented "the door is open anyway." We do not believe that this statement, when read in context, can be considered an invocation of the principle of evidence law articulated by the Second Circuit in *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir.1993), *cert. denied*, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994).

2. The district court noted that the statement was properly admitted. Certainly, Mr. Allison's statement that he was an addict was relevant to establish possession, one of the elements of the government's case, and therefore an admission of a party-opponent. *See* Fed.R.Evid. 801(d)(2)(A). In any event, Mr. Allison never challenged the admissibility of the statement.

lant's Br. at 23. Instead, he relied on the previous court ruling "and then got burned when the court changed the rules at the end of the game." *Id.*

We cannot accept this submission. In our view, although Mr. Allison's trial certainly was not a perfect one, it was not a fundamentally unfair one. By the time the case was submitted to the jury for decision, the defense had ample opportunity, through cross examination of the officer who testified as to the earlier sales, to challenge the evidence of the earlier drug sales. Indeed, it is not at all clear that more extensive preparation on this point would have elicited anything of value for the defense on the rather straightforward account of the sales. Nor do we believe that the credibility of the defense counsel was so harmed by the district court's reversal of the earlier ruling as to have impeded significantly his case before the jury. Although the situation did deprive the defense counsel of the opportunity to anticipate the government's use of the earlier drug sales, it is significant that both sides shared the burden. Neither side could raise this evidence during its opening statement.

There also was not insubstantial, although not overwhelming, evidence of guilt other than the evidence of the earlier drug sales. There were two empty plastic baggies and $245 in small bills in Mr. Allison's pockets; there were also six grams of crack cocaine worth about $1,200.

### C.

■ What we already have said about the evidence of record in the preceding section also answers Mr. Allison's contention that the evidence is legally insufficient to establish the charged crime of possession with intent to distribute. Mr. Allison relies heavily upon the decision of the District of Columbia Circuit in *United States v. Stephens*, 23 F.3d 553 (D.C.Cir.), *cert. denied*, 513 U.S. 1005, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994). In that case, Judge Sentelle wrote that, "when the government seeks to establish intent to distribute based solely on the quantity of drugs found in a defendant's possession, the quanti-

ty possessed must significantly exceed that necessary for personal use." *Id.* at 557–58. In that case, the court held that 5.9 grams of crack "could not singlehandedly support an inference of an attempt to distribute." *Id.* at 557. Notably, Judge Sentelle also wrote, "We have previously recognized that, when combined with other evidence of distribution, a defendant's possession of a quantity of drugs only *moderately* greater than the amount typically possessed for personal use may add to the inference of intent to distribute." *Id.* Here, as we have discussed previously, the government does not rely solely on the amount of cocaine base retrieved from Mr. Allison. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

### Conclusion

Because we do not believe that the district court committed reversible error, its judgment must be affirmed.

AFFIRMED.